# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | BLANCHE M. MANNING | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 2094 | DATE | SEP 2 1 2004 |
| CASE TITLE | John L. Birch (#B-15189) vs. Jerry Jones, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the accompanying Memorandum Opinion and Order, the defendants' motion for summary judgment [#68] is granted. The plaintiff's cross-motions for summary judgment [docket nos. 61 and 66] are denied. The clerk is directed to enter judgment in favor of the defendants Page and Jones and against the plaintiff pursuant to Fed. R. Civ. P. 56. The case is terminated. The parties are to bear their own costs. The status conference previously scheduled for September 28, 2004, at 11:00 is vacated.

(11) ■ [See attached Memorandum Opinion and Order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 2 2 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | 71 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | SEP 2 2 2004 date mailed notice | |
| mjm | courtroom deputy's initials | 2004 SEP 22 AM 9:00 Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN L. BIRCH, | )<br>) |
| Plaintiff, | ) Blanche M. Manning<br>) |
| v. | ) 02 CV 2094<br>) |
| JERRY JONES and JAMES PAGE, | )<br>) |
| Defendants. | ) |

DOCKETED SEP 2 2 2004

## MEMORANDUM OPINION AND ORDER

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, officials at the Stateville Correctional Center, violated his constitutional rights by acting with deliberate indifference to his safety. More specifically, the plaintiff alleges that he was placed, over his repeated protests, in a cell with a dangerous and belligerent inmate and that his cellmate attacked him. This matter is before the court for consideration of the parties' cross-motions for summary judgment. For the reasons stated in this order, judgment must be granted in favor of the defendants and against the plaintiff because, under the circumstances of this case, the defendants cannot be held liable under the Civil Rights Act for the attack.

## STANDARD FOR A SUMMARY JUDGMENT MOTION

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a



matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Prime Northgate Plaza Ltd. Partnership v. Lifecare Acquisitions Corp.*, 985 F. Supp. 815, 817 (N.D. Ill. 1997). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 393 (7th Cir. 1997), *cert. denied*, 523 U.S. 1118 (1998). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Disputed facts are material only if they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992).

## FACTS

The plaintiff is a state prisoner, confined at the Stateville Correctional Center at all times relevant to this action. (Complaint, p. 2.) The defendant Jerry Jones, currently retired, was the placement office supervisor at Stateville at the time of the events giving rise to this lawsuit. (*Id.*, p. 1; Defendants' Exhibit C, Affidavit of Jerry Jones, ¶ 1.) The defendant James Page, likewise now retired, was Stateville's warden at the time of the events giving rise to this lawsuit. (Defendants' Exhibit B, Affidavit of James Page, ¶ 1.)

The following facts are uncontested for purposes of this motion: In October 1998, the plaintiff was transferred from a medium security facility to the Stateville Correctional Center after he was cited (wrongfully, he claims) for a staff assault. (Defendants' Exhibit A, Deposition of John L. Birch, at pp. 9-10.) Presumably following his release from segregation, somewhere between October 20 and October 25, 1998, the plaintiff was placed in a cell with inmate Cornell Ivy. (*Id.*, pp. 29-30.)

The plaintiff had not named inmate Ivy as an enemy on the IDOC's "Keep-Separate-From" [also known as "Enemies"] List. (*Id.*, pp. 25-26.) The plaintiff did not file a regular or emergency grievance immediately upon being placed with Ivy. (*Id.*, pp. 24-25.) The plaintiff did not speak directly to either of the named defendants about any problems with Ivy. (*Id.*, pp. 18, 23-25, 27-28, 33-34 and 41; *see also* Page Affidavit, ¶ 12; Jones Affidavit, ¶ 8.) The plaintiff never requested placement in protective custody either before or after the altercation. (Plaintiff's Deposition, pp. 45-46.) Neither Page nor Jones was aware that the plaintiff feared for his safety at the hands of inmate Ivy. (Page Affidavit, ¶ 15; Jones Affidavit, ¶ 8.) No staff contacted Jones regarding fears about the plaintiff's physical safety prior to the incident. (Jones Affidavit, ¶ 11.)

Jones was not in the chain-of-command for inmate grievances. (Jones Affidavit, ¶ 7.) Jones never received any correspondence, grievance, or other notification from the plaintiff that he had concerns about his cell placement. (*Id.*, ¶ 8.) Had Jones received a grievance from the plaintiff, he would have forwarded it to the plaintiff's counselor for investigation. (¶ 9.)

When deciding where to house an inmate, the placement officer reviews such information as the inmate's gang affiliation, his aggression level, his "predator" or "vulnerable" status, and the "keep separate from" [or enemies] list. (Jones Affidavit, ¶ 2.) Stateville is a maximum

3

security facility, housing mostly inmates convicted of Class X, Class 1 and Class 2 felonies. (*Id.*) During the relevant time period, the plaintiff was classified as a high aggression level inmate, with an aggression score as high or higher than inmate Ivy's. (*Id.*, ¶ 10; Defendants' Exhibit E, IDOC Internal Classification Form.) The aggression level is based on such factors as the nature of the offense for which the inmate has been convicted, his disciplinary and adjustment history, and his security classification. (*Id.*) Contrary to the plaintiff's belief, lieutenants, captains and building superintendents do, in fact, have the power to authorize cell changes. (Page Affidavit, ¶ 13.)

The plaintiff says that a Sergeant Greenfield witnessed inmate Ivy acting "in a dangerous and belligerent" manner toward the plaintiff one day. (Plaintiff's deposition, pp. 22-23.) The plaintiff told Greenfield that the two inmates were not getting along and that Ivy had specifically threatened "to [expletive deleted] me up." (Id., p. 29.) Greenfield allegedly told the plaintiff that he had contacted the placement office but that Jones had declined to authorize a cell change, announcing that "the only cell changes that he would make would be to disciplinary segregation." (*Id.*, p. 23.) The plaintiff also claims that he spoke to his counselor, as well as an unidentified lieutenant, about problems with Ivy. (*Id.*, pp. 27, 30.) [The plaintiff explains that he did not know who his building superintendent was and never saw him, *see* Plaintiff's Deposition at p. 53, and that in any case he would have feared for his safety had he contacted the superintendent. *Id.*]

On or about November 1, 1999, the plaintiff filed a grievance concerning his placement with Ivy. (*Id.*, p. 24; Defendants' Exhibit D, Grievance dated November 2, 2004). The grievance stated, "This inmate states he is white and keeps getting celly's (sic) that (sic) are Islam, Muslim

4

and or Racists. Cells without an option for a cell change and a chance to be secure in my person and property. Policy of not allowing a person a cell change without making trouble for himself are wrong." (Exhibit D.) In the relief section, the plaintiff requested, "A cell change into a cell where I can sleep without one eye open, or another celly." (*Id.*)

The counselor's November 3, 1999, response stated: "Cell assignments are made by the placement officer on a non-discriminatory basis." (*Id.*) On November 18, 1999, the defendant Page [or a designated subordinate] signed off as concurring with the counselor's response. (*Id.*, p. 2; Page, Affidavit, ¶ 11.)

In the meantime, on November 2, 1999, the plaintiff and Ivy had a physical altercation. (Defendants' Exhibit G, Incident Reports.) When inmate Ivy at first refused to heed correctional officers' orders to stop fighting and the fight continued to escalate, one of the officers fired a warning shot, thereby quelling the situation. (*Id.*) The plaintiff sustained a broken nose, facial injuries, and lost a tooth or teeth. (*Id.*)[1] Ivy had neck and chest injuries. (*Id.*) The fight lasted "a couple of minutes" before the inmates were separated. (Plaintiff's Deposition, p. 39.) Both inmates received medical attention. (*Id.*, pp. 43-45.)

## DISCUSSION

For the following reasons, no material facts are in dispute, and the court concludes that the defendants are entitled to judgment as a matter of law because: (1) even viewing the record in

---

[1] The defendants dispute the extent of the plaintiff's injuries, citing a doctor's testimony in a prior suit the plaintiff pursued in the Illinois Court of Claims. The court will nevertheless assume for purposes of this motion that Ivy was the aggressor and that the plaintiff suffered the injuries he claims. The court may grant summary judgment if facts are in dispute, so long as those facts are not outcome determinative. *Matter of Wildman*, 859 F.2d 553, 556 (7th Cir. 1988); *Nash v. DeTella*, No. 00 C 2784, 2001 WL 1160840, *2 n. 5 (N.D. Ill. Oct. 2, 2001) (Zagel, J.)

the light most favorable to the plaintiff, no reasonable person could find that the defendants acted with deliberate indifference to the plaintiff's safety; and (2) the named defendants in this case cannot be held liable under 42 U.S.C. § 1983 for the unexpected altercation.

It is well established that the Eighth Amendment requires correctional officers to take reasonable steps to protect inmates from assault. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir. 1988). "When a correctional officer *intentionally* exposes a prisoner to a known risk of violence at the hands of another prisoner, he breaches the duty imposed upon him . . . and thus subjects himself to suit under 42 U.S.C. § 1983." *Id.* at 649-650 (emphasis in original).

However, only deliberate indifference [that is, failure to take reasonable measures in the face of a substantial risk of serious harm] violates the Constitution. *Farmer v. Brennan*, 511 U.S. 825, 827 (1994); *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). In this context, "deliberate indifference" means "subjective awareness." *Riccardo* at 526. The Eighth Amendment "does not demand that guards perform this task flawlessly." *Id.* at 525. "All that can be expected is that guards act responsibly under the circumstances that confront them." *Id.*, citing *McGill v. Duckworth*, 944 F.2d 344 (7th Cir. 1991).

It is not enough that a prison official ought to have recognized the risk. *Riccardo*, 375 F.3d at 526. "Lack of due care" will not subject prison officials to damages. *Davidson v. Cannon*, 474 U.S. 344 (1986). Any act with a state of mind less than intent or criminal recklessness, such as negligence or gross negligence, does not amount to cruel and unusual punishment. *Salazar v. City of Chicago*, 940 F.2d 233, 238-39 (7th Cir. 1991); *see also Tesch v. County of Green Lake*, 157 F.3d 465, 474 (7th Cir. 1998). The relevant inquiry is whether correctional officials actually knew about the danger that the plaintiff faced, not whether a

6

reasonable person should have known. *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999). *Smith-Bey v. Hospital Adm'r*, 841 F.2d 751, 758 (7th Cir. 1988).

Knowledge of impending harm is proved in one of two ways: (1) by showing the prisoner complained to prison officials about a specific threat to his safety; or (2) by showing the existence of a risk so substantial or pervasive that the defendant's knowledge of the risk can be inferred. *James v. Milwaukee County*, 956 F.2d 696, 699-700 (7th Cir.), *cert. denied*, 506 U.S. 818 (1992); *Goka v. Bobbitt, supra*, 862 F.2d at 650. Here, the plaintiff has not satisfied either criterion with respect to either defendant..

### Specific Threat

In the case at bar, the court finds no basis for liability, as the record does not support an inference of deliberate indifference. There is no evidence whatsoever that the named defendants were on notice at any time prior to the altercation that Ivy posed a significant threat of harm to the plaintiff. There is no dispute that the plaintiff was pre-screened prior to being placed with Ivy; it is likewise uncontested that Ivy was not a declared enemy or on the plaintiff's Keep-Separate-From list. The plaintiff neither spoke nor wrote to either defendant about problems with Ivy. He did not, in the first two weeks or so, file a normal or emergency grievance.

Even after the plaintiff and Ivy began experiencing conflict, the plaintiff did not apprise the defendants that his safety had been threatened. The plaintiff neither spoke directly to either defendant nor corresponded with them in the two weeks prior to the altercation.

It is true that the plaintiff contends that a Sergeant Greenfield witnessed problems between the two prisoners and told the plaintiff that he had contacted Jones, who declared that the only cell change would be a move to segregation. However, the plaintiff's double hearsay is

7

inadmissible as evidence, *see* Fed. R. Evid. Rule 802, and insufficient to defeat Jones' affidavit in which he states under oath that neither the plaintiff nor any security staff contacted him about issues with Ivy. *See* Jones Affidavit, ¶ 11. The unreliability of the plaintiff's declaration is further weakened by the fact that it misstates actual IDOC policy: according to both Jones and Page, lieutenants, captains and building superintendents–and not just the placement officer–can authorize inmate moves between cells.

In addition, the plaintiff's grievance, filed at least ten days after his placement with Ivy, on either the date of the altercation or the day prior, failed to indicate that his safety had been threatened in any way. The plaintiff merely complained that he was white and kept getting assigned "Islam, Muslim and or Racist" cellmates. *See* Defendants' Exhibit D. Although the plaintiff requested placement in a cell "where I can sleep without one eye open," *id.*, the vague allusion to potential discord did not express any specific threat, nor any genuine basis for concerns about his safety. Rather, the grievance seemed to reflect the plaintiff's prejudices and preferences. "A prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991). It is most regrettable if the plaintiff was too afraid of reprisal to vocalize his concerns about Ivy in a more concrete manner. However, his failure to alert authorities resolves them of liability.

In short, nothing in the record supports a finding that the named defendants had actual knowledge that inmate Ivy posed a substantial risk of serious harm to the plaintiff. No reasonable juror could, therefore, find on the basis of the evidence before the court that either Page or Jones ignored a specific threat to the plaintiff's safety at the hands of Ivy.

## Substantial Risk of Harm in General

The plaintiff has likewise failed to establish that violence at the Stateville Correctional Center is overall so rampant that the defendants are liable for a pattern of neglect. The record does not support an inference that the plaintiff was exposed to such a substantial or pervasive a risk of harm that the defendants' knowledge of the risk can be inferred.

The plaintiff's unsupported declarations to the contrary, there is no genuine dispute as to whether Stateville pre-screens inmates before housing them together. According to the defendant Jones, when deciding where to assign an inmate, the placement officer reviews such information as the inmate's gang affiliation, his aggression level, his status as a "predator" or a victim, and the "keep separate from" [or enemies] list. Institutional Directive 05.05.125K3 (Defendants' Exhibit F) reflects the formal security classification system that is in place at Stateville. During the relevant time period, the plaintiff was classified as a high aggression level inmate, with an aggression score as high or higher than inmate Ivy's. The plaintiff offers no support other than rumor, hearsay and belief that inmates have to engage in a physical altercation resulting in "bloodshed" before they are separated.[2]

The Eighth Amendment requires only that correctional officials not place inmates in harm's way "gratuitously." *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004).

> The qualification "gratuitously" is important, because prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more. Guards cannot turn away persons committed by the courts; nor do individual guards have any control over crowding and other systemic

---

[2] The system in place has shortcomings as after the plaintiff was released from segregation following the altercation, authorities initially attempted to place him back into a cell with Ivy. Plaintiff's Deposition, p. 45. Fortunately, the reunion did not take place when both the plaintiff and Ivy balked at the assignment. *Id.*

9

circumstances. All that can be expected is that guards act responsibly under the
circumstances that confront them.

*Id., citing McGill v. Duckworth*, 944 F.2d 344 (7th Cir. 1991).

Stateville is a maximum security correctional facility, housing mostly inmates convicted of serious felonies. Unfortunately, a maximum security prison is a violent and explosive environment. *Hibma v. Odegaard*, 769 F.2d 1147, 1159 (7th Cir. 1985). Correctional officials cannot be expected to eliminate the possibility of all attacks. *Id.* While the assault is most regrettable, the defendants cannot be held liable either for holding a dangerous inmate (that's what prisons are for), or for preventing a sudden and unexpected altercation. Under the circumstances described here, the defendants cannot be held accountable for the random, unanticipated attack by an inmate not known to be an enemy of the plaintiff.

The court also notes that it is conceivable that the plaintiff may, at one time, have had a cause of action against his counselor, Sergeant Greenfield, the unidentified lieutenant, and anyone else who was personally aware of mounting friction between the plaintiff and his cellmate but who took no action. However, as the court previously advised the plaintiff, it is now too late to sue those individuals. *See* Minute Order of September 10, 2002; Memorandum Opinion and Order entered May 20, 2003. Because the plaintiff waited until just days before the statute of limitation expired to bring suit, any cause of action against other correctional officers is now time-barred because in this circuit, a plaintiff cannot invoke the relation back principles of Rule 15(c) to bring in new defendants after the statute of limitations has expired. *See Worthington v. Wilson*, 8 F.3d 1253, 1256-57 (7th Cir. 1993); *see also Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir. 1980). The plaintiff's contention that he named the wrong defendants due to "misrepresentation or concealment" is without merit. The plaintiff knew when he filed

10

>circumstances. All that can be expected is that guards act responsibly under the
>circumstances that confront them.

*Id., citing McGill v. Duckworth*, 944 F.2d 344 (7th Cir. 1991).

Stateville is a maximum security correctional facility, housing mostly inmates convicted of serious felonies. Unfortunately, a maximum security prison is a violent and explosive environment. *Hibma v. Odegaard*, 769 F.2d 1147, 1159 (7th Cir. 1985). Correctional officials cannot be expected to eliminate the possibility of all attacks. *Id.* While the assault is most regrettable, the defendants cannot be held liable either for holding a dangerous inmate (that's what prisons are for), or for preventing a sudden and unexpected altercation. Under the circumstances described here, the defendants cannot be held accountable for the random, unanticipated expected attack by an inmate not known to be an enemy of the plaintiff.

The court also notes that it is conceivable that the plaintiff may, at one time, have had a cause of action against his counselor, Sergeant Greenfield, the unidentified lieutenant, and anyone else who was personally aware of mounting friction between the plaintiff and his cellmate but who took no action. However, as the court previously advised the plaintiff, it is now too late to sue those individuals. *See* Minute Order of September 10, 2002; Memorandum Opinion and Order entered May 20, 2003. Because the plaintiff waited until just days before the statute of limitation expired to bring suit, any cause of action against other correctional officers is now time-barred because in this circuit, a plaintiff cannot invoke the relation back principles of Rule 15(c) to bring in new defendants after the statute of limitations has expired. *See Worthington v. Wilson*, 8 F.3d 1253, 1256-57 (7th Cir. 1993); *see also Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir. 1980). The plaintiff's contention that he named the wrong defendants due to "misrepresentation or concealment" is without merit. The plaintiff knew when he filed

10

suit the identities of those who witnessed his conflicts with Ivy and those to whom he directly complained.

Moreover, even assuming that Greenfield and others acted with deliberate indifference (a matter that the court expressly declines to address), their alleged actions cannot be ascribed to the named defendants. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Washington*, 97 F.3d 987, 991 (7th Cir. 1996). The mere fact that Page was Stateville's warden and Jones its placement officer is insufficient to establish liability, as the doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). Section 1983 does not create collective or vicarious responsibility. *Id.* To be held liable under 42 U.S.C. § 1983, a supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. . . ." *Gentry*, 65 F.3d at 561 (citations omitted). As discussed *supra*, the plaintiff's grievance did not alert authorities that he was in any danger. Thus, the named defendants cannot be held liable under § 1983.

A word is nevertheless in order regarding the warden's assertion that he cannot be held accountable for denying the grievance because a subordinate signed off in his name. The defendant Page, as warden, had the responsibility for reviewing inmate grievances. While he may delegate this responsibility to others who sign his name for him, the buck still stops at the warden. *See, e.g., Goodman v. Carter*, No. 00 C 0948, 2001 WL 755137, at *5 (N.D. Ill. Jul. 2, 2001) (Lindberg, J.) (The warden "may delegate his duty to review inmate grievances. Nevertheless, he may not play a 'shell game' delegating responsibility without disclosing to

11

whom it was delegated [and then deny] personal responsibility when a prisoner seeks to hold him accountable.") By delegating the task to others, the defendant Page effectively consented, approved and, in effect, turned a "blind eye" to how those grievances were handled. *See Powell v. Godinez*, No. 93 C 3469, 1997 WL 603927, at *5 (N.D. Ill. Sep. 24, 1997) (Manning, J.) ("[i]f the warden simply has a policy of not reading complaints from prisoners, it could be considered intentional ignorance, which can carry the same consequences as actual knowledge"). Those signing the warden's name effectively act as his agent and their actions are accordingly attributable to him. Because the grievance raised no concerns of a serious risk of substantial harm and reached the warden's office after the assault had already taken place, Page's arguments regarding delegation are irrelevant. The court, nevertheless, is troubled that counsel continues to make this argument despite repeated court rulings rejecting this position.

## **CONCLUSION**

In sum, there is no genuine dispute as to any outcome-dispositive fact, and the defendants have established that they are entitled to judgment as a matter of law. Even viewing the record in the light most favorable to the plaintiff, no reasonable jury could find that either of the named defendants acted with deliberate indifference to the plaintiff's safety. The evidence fails to support a conclusion that the defendants were aware of and disregarded a specific, substantial risk of serious harm to the plaintiff; moreover, the evidence fails to demonstrate that there was, in general, no system in place to protect inmates from other aggressive inmates. The plaintiff has failed to adduce any admissible evidence to support his claim that the Stateville administration turned a blind eye to inmate-on-inmate violence.

This is a final, appealable order. If the plaintiff wishes to appeal this order granting summary judgment in favor of the defendants, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C); *Hyche v. Christensen*, 170 F.3d 769, 771 (7th Cir. 1999). If the plaintiff does choose to appeal, he will be liable for the $255 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a "strike" under 28 U.S.C. § 1915(g). The plaintiff is warned that if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.*

IT IS THEREFORE ORDERED, for the reasons set forth in the preceding paragraphs, that the plaintiff's motions for summary judgment [docket nos. 61 and 66] are denied.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment [docket #68] is granted. The clerk is directed to enter judgment in favor of the defendants Page and Jones and against the plaintiff pursuant to Fed. R. Civ. P. 56. The case is terminated.

ENTER:

_Blanche M. Manning_
Blanche M. Manning
United States District Court

Dated: 9-21-04

13